## UNITED STATES *v.* WILSON

No. 90–1745.  Argued January 15, 1992—Decided March 24, 1992

330

Thomas, J., delivered the opinion of the Court, in which Rehnquist, C. J., and Blackmun, O'Connor, Scalia, Kennedy, and Souter, JJ., joined. Stevens, J., filed a dissenting opinion, in which White, J., joined, *post*, p. 337.

*Amy L. Wax* argued the cause for the United States. With her on the briefs were *Solicitor General Starr, Assistant Attorney General Mueller, Deputy Solicitor General Bryson,* and *Joel M. Gershowitz.*

*Henry A. Martin,* by appointment of the Court, 502 U. S. 936, argued the cause for respondent. With him on the brief were *Deborah S. Swettenam* and *Alan Morrison.*

Justice Thomas delivered the opinion of the Court.

A defendant convicted of a federal crime has a right under 18 U. S. C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins. In this case, we must decide whether the District Court calculates the credit at the time of sentencing or whether the Attorney General computes it after the defendant has begun to serve his sentence.

## I

In the summer and early fall of 1988, respondent Richard Wilson committed several crimes in Putnam County, Tennessee. The precise details of these crimes do not concern us here. It suffices to state that Tennessee authorities arrested Wilson on October 5, 1988, and held him in jail pending the outcome of federal and state prosecutions. After certain preliminary proceedings, Wilson eventually pleaded guilty to various federal and state criminal charges.

On November 29, 1989, the United States District Court for the Middle District of Tennessee sentenced Wilson to 96 months' imprisonment for violation of the Hobbs Act, 18 U. S. C. § 1951. The District Court denied Wilson's request for credit for time served during his presentence state custody. On December 12, 1989, a Tennessee trial court sentenced Wilson to several years' imprisonment for robbery and two other felonies. In contrast to the District Court, the state court granted Wilson 429 days of credit toward his state sentence. Later that day, Tennessee authorities transferred Wilson to federal custody, and he began serving his federal sentence.

Wilson appealed the District Court's refusal to give him credit for the time that he had spent in state custody. Reversing the District Court, the United States Court of Appeals for the Sixth Circuit held that Wilson had a right to credit and that the District Court should have awarded it to him. 916 F. 2d 1115 (1990). We granted certiorari, 502 U. S. 807 (1991), and now reverse.

## II

The Attorney General, through the Bureau of Prisons (BOP), has responsibility for imprisoning federal offenders. See 18 U. S. C. § 3621(a). From 1966 until 1987, a provision codified at 18 U. S. C. § 3568 (1982 ed.) required the Attorney General to award federal prisoners credit for certain time

spent in jail prior to the commencement of their sentences. This provision, in part, stated:

> "*The Attorney General shall give any such person credit* toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed." Pub. L. 89–465, § 4, 80 Stat. 217 (emphasis added).

The Attorney General implemented this provision by computing the amount of credit after taking custody of the sentenced federal offender. Although the federal courts could review the Attorney General's determination, the sentencing court did not participate in computation of the credit. See, *e. g., United States* v. *Morgan,* 425 F. 2d 1388, 1389–1390 (CA5 1970).

In the Sentencing Reform Act of 1984, 18 U. S. C. § 3551 *et seq.,* which became effective in 1987, Congress rewrote § 3568 and recodified it at § 3585(b). Unlike its predecessor, § 3585(b) does not mention the Attorney General. Written in the passive voice, it states:

> "*A defendant shall be given credit* toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> "(1) as a result of the offense for which the sentence was imposed; or
>
> "(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> "that has not been credited against another sentence." 18 U. S. C. § 3585(b) (emphasis added).

In describing the defendant's right to receive jail-time credit in this manner, the provision has created doubt about whether district courts now may award credit when imposing a sentence. The question has significance in this case

because the final clause of § 3585(b) allows a defendant to receive credit only for detention time "that has not been credited against another sentence." When the District Court imposed Wilson's 96-month sentence on November 29, 1989, Wilson had not yet received credit for his detention time from the Tennessee courts. However, by the time the Attorney General imprisoned Wilson on December 12, 1989, the Tennessee trial court had awarded Wilson 429 days of credit. As a result, Wilson could receive a larger credit if the statute permitted crediting at sentencing, and thus before the detention time had been credited against another sentence.

The United States argues that it is the Attorney General who computes the amount of the credit after the defendant begins his sentence and that the Court of Appeals erred in ordering the District Court to award credit to Wilson. Wilson counters that § 3585(b) authorizes the District Court to compute the amount of the credit at sentencing. We agree with the United States.

## A ·

We do not accept Wilson's argument that § 3585(b) authorizes a district court to award credit at sentencing. Section 3585(b) indicates that a defendant may receive credit against a sentence that *"was imposed."* It also specifies that the amount of the credit depends on the time that the defendant *"has spent"* in official detention "prior to the date the sentence commences." Congress' use of a verb tense is significant in construing statutes. See, *e. g., Otte* v. *United States,* 419 U. S. 43, 49–50 (1974); *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Foundation, Inc.,* 484 U. S. 49, 63–64, n. 4 (1987). By using these verbs in the past and present perfect tenses, Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.

Federal defendants do not always begin to serve their sentences immediately. In this case, the District Court sen-

tenced Wilson on November 29, 1989, but Wilson did not begin his sentence until December 12, 1989. At sentencing, the District Court only could have speculated about the amount of time that Wilson would spend in detention prior to the commencement of his sentence; the court did not know when the state-court proceedings would end or when the federal authorities would take Wilson into custody. Because § 3585(b) bases the credit on how much time a defendant "has spent" (not "will have spent") prior to beginning his sentence, the District Court could not compute the amount of the credit at sentencing.

The final phrase of § 3585(b) confirms this interpretation. As noted above, it authorizes credit only for time that "has not been credited against another sentence." Wilson argues that this phrase does not prevent him from receiving credit because his official detention "ha[d] not been credited" against the state sentence when the District Court imposed the federal sentence. Under this logic, however, if the District Court had sentenced Wilson a few weeks later than it did, he would not have received credit under § 3585(b). This interpretation of the statute would make the award of credit arbitrary, a result not to be presumed lightly. See *United States* v. *Turkette,* 452 U. S. 576, 580 (1981) (absurd results are to be avoided). We can imagine no reason why Congress would desire the presentence detention credit, which determines how much time an offender spends in prison, to depend on the timing of his sentencing. For these reasons, we conclude that § 3585(b) does not authorize a district court to compute the credit at sentencing.

## B

We agree with the United States that the Attorney General must continue to compute the credit under § 3585(b) as he did under the former § 3568. When Congress writes a statute in the passive voice, it often fails to indicate who must take a required action. This silence can make the

meaning of a statute somewhat difficult to ascertain. See, *e. g., E. I. du Pont de Nemours & Co.* v. *Train,* 430 U. S. 112, 128 (1977); *Gladstone, Realtors* v. *Village of Bellwood,* 441 U. S. 91, 102–103 (1979). Yet, even though § 3585(b) no longer mentions the Attorney General, we do not see how he can avoid determining the amount of a defendant's jail-time credit.

After a district court sentences a federal offender, the Attorney General, through BOP, has the responsibility for administering the sentence. See 18 U. S. C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed"). To fulfill this duty, BOP must know how much of the sentence the offender has left to serve. Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant.

Crediting jail time against federal sentences long has operated in this manner. After Congress enacted § 3568 in 1966, BOP developed detailed procedures and guidelines for determining the credit available to prisoners. See Federal Prison System Program Statement No. 5880.24 (Sept. 5, 1979) and Federal Bureau of Prisons Operations Memorandum No. EMS DM 154–89 (Oct. 23, 1989), Apps. B and C to Brief for United States (stating BOP's procedures for computing jail-time credit determinations); see also *United States* v. *Lucas,* 898 F. 2d 1554 (CA11 1990). Federal regulations have afforded prisoners administrative review of the computation of their credits, see 28 CFR §§ 542.10–542.16 (1990); *Lucas, supra,* at 1556, and prisoners have been able to seek judicial review of these computations after exhausting their administrative remedies, see *United States* v. *Bayless,* 940 F. 2d 300, 304–305 (CA8 1991); *United States* v. *Flanagan,* 868 F. 2d

1544, 1546 (CA11 1989); *United States* v. *Martinez*, 837 F. 2d 861, 865–866 (CA9 1988). Congress' conversion of an active sentence in § 3568 into a passive sentence in § 3585(b) strikes us as a rather slim ground for presuming an intention to change these well-established procedures. "It is not lightly to be assumed that Congress intended to depart from a long established policy." *Robertson* v. *Railroad Labor Bd.*, 268 U. S. 619, 627 (1925).

C

Wilson argues that our conclusion conflicts with the familiar maxim that, when Congress alters the words of a statute, it must intend to change the statute's meaning. See *Russello* v. *United States*, 464 U. S. 16, 23–24 (1983). He asserts that, by removing the explicit reference to the Attorney General when it enacted § 3585(b), Congress expressed a desire to remove the Attorney General from the process of computing sentences. Otherwise, Wilson contends, Congress would have had no reason to modify the provision as it did. We have no difficulty with the general presumption that Congress contemplates a change whenever it amends a statute. In this case, however, we find that presumption overcome by our conclusions that the District Court cannot perform the necessary calculation at the time of sentencing and that the Attorney General, in implementing the defendant's sentence, cannot avoid computing the credit.

We candidly acknowledge that we do not know what happened to the reference to the Attorney General during the revision. We do know that Congress entirely rewrote § 3568 when it changed it to its present form in § 3585(b). It rearranged its clauses, rephrased its central idea in the passive voice, and more than doubled its length. In view of these changes, and because any other interpretation would require us to stretch the meaning of the words that § 3585(b) now includes, we think it likely that the former reference to the Attorney General was simply lost in the shuffle.

Our interpretation of § 3585(b), however, does not render the 1987 revision meaningless. Congress altered § 3568 in at least three ways when it enacted § 3585(b). First, Congress replaced the term "custody" with the term "official detention." Second, Congress made clear that a defendant could not receive a double credit for his detention time. Third, Congress enlarged the class of defendants eligible to receive credit. Under the old law, a defendant could receive credit only for time spent in custody in connection with "the offense . . . for which sentence was imposed." Under the new law, a defendant may receive credit both for this time and for time spent in official detention in connection with "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." In light of these revisions, and for the foregoing reasons, we conclude that the Attorney General may continue to compute the amount of the credit. The judgment of the Court of Appeals is

*Reversed.*

JUSTICE STEVENS, with whom JUSTICE WHITE joins, dissenting.

Today's rigid interpretation of a remedial statute is not supported by the text, legislative history, or underlying policies of the statute. In *Crandon* v. *United States*, 494 U. S. 152, 158 (1990), this Court said that "[i]n determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." The Court has failed to do this today. The statute at issue, 18 U. S. C. § 3585(b), gives the convicted defendant a right to have his term of imprisonment shortened by the amount of time he has already spent in either federal or state custody as a result of

his offense, provided that the time has not already been credited against another sentence.[1]

The defendant's right to the full credit authorized by the statute is obviously an important right. Both the Attorney General and the sentencing judge have a duty to respect and protect that right. Moreover, it is clear that in the event there is a dispute between the parties over the right to a credit, the dispute must be resolved by the court. No one contends that the Attorney General has unreviewable discretion to determine the appropriate credit in any case.[2]

In most cases, the calculation of the credit is a routine, ministerial task that will not give rise to any dispute.[3] Occasionally, however, as this case demonstrates, there may be a legitimate difference of opinion either about the meaning of the statute or about the relevant facts.[4] Such a dispute

---

[1] Title 18 U. S. C. § 3585(b) provides:

"(b) CREDIT FOR PRIOR CUSTODY.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

"(1) as a result of the offense for which the sentence was imposed; or

"(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

"that has not been credited against another sentence."

[2] Prior to 1987, when the statute assigned the initial responsibility for determining the length of the credit to the Attorney General, it was settled that his determination was subject to judicial review after the prisoner exhausted his administrative remedies. See *Chua Han Mow* v. *United States,* 730 F. 2d 1308, 1313 (CA9 1984), cert. denied, 470 U. S. 1031 (1985).

[3] As respondent acknowledged, "the arithmetical task of figuring out the exact date an offender will finish serving his sentence" "is essentially an administrative ministerial function." Tr. of Oral Arg. 4; see also *id.,* at 10, 21, 52.

[4] Typically the dispute centers on whether the questioned time was "official detention" or whether the time has already been "credited" to another sentence. See, *e. g., United States* v. *Beston,* 936 F. 2d 361 (CA8 1991) *(per curiam); United States* v. *Chalker,* 915 F. 2d 1254 (CA9 1990); *United States* v. *Woods,* 888 F. 2d 653 (CA10 1989), cert. denied, 494 U. S. 1006 (1990).

must, of course, be resolved by the judge. The only question that remains, then, is *when* the judge shall resolve the issue—at the time of sentencing, when the defendant is represented by counsel, or at some later date, after the defendant has begun to serve his sentence.

The credit at issue in this case was a period of almost 14 months that respondent had spent in state custody before he entered into a plea agreement with the federal prosecutor.[5] Prior to the amendment of § 3585(b),[6] which became effective in 1987, the statute—at least as construed by the Sixth Circuit where this case arose—did not authorize a credit for time spent in state custody. See *United States* v. *Blankenship,* 733 F. 2d 433, 434 (1984).[7] Consistent with that preamendment practice, the District Court denied respondent's request for credit for the 14 months that he had spent in state custody.[8] There are two points that emerge from that

---

[5] In the District Court, the Government did not take any position with respect to respondent's request for jail credit, stating that "as to defense's petition that the time spent incarcerated on state charges for the crimes which occurred prior to the federal conspiracy, that's up to the court and the government takes no position as to that." Tr. 86. In the Court of Appeals, however, the Government contended that respondent was not entitled to the credit. See Brief for Appellee in No. 89–6583 (CA6), pp. 14–15.

[6] Before § 3585 became effective, 18 U. S. C. § 3568 (1982 ed.) governed credit for presentence time spent in official detention.

[7] See also *United States* v. *Garcia-Gutierrez,* 835 F. 2d 585, 586 (CA5 1988) (construing former § 3568).

[8] "IT IS THE JUDGMENT OF THIS COURT THAT defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of:

"Ninety six months (96), which includes an upward departure of thirty-three months. Defendant is unable to pay a fine, or the cost of his incarceration or supervised release. Defendant will not be given any credit for the time spent in state custody." Record, Doc. No. 56.

The Government defended this ruling in its brief to the Court of Appeals, arguing:

"Although there is some authority that a defendant is entitled to credit for time served in state custody once a federal detainer has been lodged, the state confinement must be the product of action by federal law enforce-

ruling: First, the District Court erroneously construed the amended statute, and second, the legal question that the District Court decided was ripe for decision at the time of sentencing.

In its opinion today, the Court emphasizes the fact that the state court later awarded respondent credit for his 14 months in pretrial detention, arguing that he therefore would not have been entitled to a federal credit if the federal determination had been made after the state sentence was imposed. See *ante*, at 333, 334. This argument is misleading for three reasons. First, if the Federal District Court had granted respondent's request, it seems unlikely that the state court would also have allowed the credit. Second, although the Court assumes that the risk of a double credit could be avoided by postponing the credit determination until after the convicted defendant begins to serve his federal sentence, that assumption is erroneous because state proceedings frequently do not terminate until after a defendant begins to serve his federal sentence or, indeed, in some cases, until after the defendant has been released from federal custody. Third, when a correct federal sentence, including a correct credit for pretrial custody, has been imposed, the subsequent action of a state court concerning the amount of punishment for any state offenses the defendant may have committed is purely a matter of state concern.

In this case, for example, if the Federal Sentencing Guidelines had prescribed a sentence of less than 14 months, and if the District Court, or indeed the Attorney General, had awarded respondent the proper credit, and therefore released him from custody, it would be bizarre to conclude that

ment officials. *United States* v. *Garcia-Gutierrez,* 835 F. 2d 585, 586 (5th Cir. 1988); *United States* v. *Harris,* 876 F. 2d 1502, 1506 (11th Cir. 1989), *cert. denied,* [493 U. S. 1005] (1989). The federal detainer must be the exclusive reason a prisoner in state custody has not been released on bail. *United States* v. *Blankenship,* 733 F. 2d 433, 434 (6th Cir. 1984)." Brief for Appellee in No. 89–6583, pp. 14–15.

the Federal Government should rearrest him if a Tennessee court subsequently decided to give him the same credit because he would already have served almost 14 months in custody, thus fulfilling his federal sentence. The *possibility* that a state court will allow the same credit that a federal court allows exists whenever a state sentence is imposed after the federal credit determination is made, whether it is made by the trial judge or by the Attorney General and whether it is made at the sentencing hearing or at the commencement of the federal sentence. The *likelihood* that the state court will allow a second credit after a federal credit has been allowed seems remote no matter when or by whom the federal determination is made. More importantly, the existence of a hypothetical risk of double credits in rare cases involving overlapping state and federal jurisdiction is not a sufficient reason for refusing to give effect to the plain language of the statute in cases in which no such problem is presented.

I

The Court's entire analysis rests on an incorrect premise. The Court assumes that the statute mandates one of two starkly different procedures: *Either* the credit determination must *always* be made by the Attorney General after the defendant has begun to serve his sentence, *or* it must *always* be made by the sentencing judge at the time of sentencing. Neither of these procedures is compelled by the statutory text. An ordinary reading of the statute's plain language ("[a] defendant *shall be given* credit toward the service of a term of imprisonment . . .") suggests that the judge has ample authority to delegate the task of calculating the credit to a probation officer or to the prosecutor, subject, of course, to judicial review, or to make it himself in the first instance. Surely there is nothing in the statutory text that purports to deprive the judge of discretion to follow whichever procedure seems best suited to the particular facts of a given case. The text, which uses the passive voice, does not specify who

will make the decision about jail credit. Certainly we should give effect to Congress' choice of words, and understand that the text, as written, does not identify a particular decisionmaker, and therefore, the appropriate decisionmaker may be *either* the judge or the Attorney General depending on the circumstances.[9]

The statute does indicate that the decision should be made after "the sentence was imposed" and that the credit shall include time spent in official detention "prior to the date the sentence commences" even if some of that time is after the sentencing hearing. If, as is true in most cases, the convicted defendant begins to serve his sentence immediately after it is imposed, it is perfectly consistent with the text in such cases to have the judge determine the credit at the conclusion of the sentencing hearing. Even if the commencement of the sentence is postponed until a later date, an order specifying the amount of the credit to which the defendant was then entitled, and directing that an additional credit be given if appropriate, would also conform to the statutory text. The statute does not prohibit the judge from resolving the issue at any time after the sentence has been imposed.[10] In short, the text does not mandate any particular procedure that must be followed in every case.

---

[9] Those Courts of Appeals that have recognized the shared role of the sentencing judge and the Attorney General in the decision to award jail credit include the Ninth Circuit and the Eighth Circuit. See, *e. g., United States* v. *Chalker,* 915 F. 2d, at 1258; *United States* v. *Beston,* 936 F. 2d, at 363.

[10] "Instead, we conclude that by failing to specify to whom such power was vested, Congress intended the Attorney General and the district courts to have concurrent authority to grant credit for time served. As a practical matter, our holding will give to the district court, in its discretion, the initial opportunity to grant credit for time previously served. We believe this result to be fully compatible with Congress' intent in passing the Comprehensive Crime Control Act of 1984. The Senate Report, in discussing the sentencing provisions of the Act, specifically decried the lack of certainty and finality under the pre-Guidelines sentencing system to the effect that 'prisoners often do not really know how long they will

Although Congress' use of the passive voice clearly leaves open the question of who the decisionmaker is with respect to jail credit, the placement of § 3585 in Subchapter D–Imprisonment, in which "the court" is called upon to determine the sentence, § 3581, impose the sentence, § 3582, include a term of supervised release, § 3583, and determine whether the term is to run concurrently or consecutively in the case of multiple sentences, § 3584, clearly points to the judge as the person who is to calculate credit, § 3585, in the first instance. Congress could have made this perfectly clear by repeating the phrase "the court" in § 3585, but that was made almost unnecessary by placing § 3585 in a subchapter in which the court clearly had responsibility for every action that needed to be taken, but could also delegate actions to the appropriate authorities.

## II

The Court's textual argument amounts to nothing more than an assertion that because *sometimes* all issues relating to the credit determination will not be ripe for decision at the time of sentencing, the trial court *never* has authority to make the credit determination even in cases that are ripe for decision.[11] Because this reasoning is so plainly flawed, the

spend in prison until the very day they are released.' *Crime Control Act,* S. Rep. No. 225, 98th Cong., 2d Sess. at 49, *reprinted in* 1984 U. S. Code Cong. & Admin. News at 3232. Allowing the district court, in its discretion, to compute credit time when the sentence is imposed furthers this congressional purpose by informing one convicted of a crime at the outset of their sentence precisely how long they will spend in prison." *United States* v. *Chalker,* 915 F. 2d, at 1258 (footnotes omitted).

[11] Certainly there are some credit issues that can arise that are ripe for decision at the time of the sentencing hearing. What constitutes "official detention" is one such issue. It is also an issue on which the Courts of Appeals are currently divided. For example, in *Moreland* v. *United States,* 932 F. 2d 690, 692 (1991), the Eighth Circuit agreed with Moreland that he should receive credit for the time he spent at a community treatment center; however, in *United States* v. *Insley,* 927 F. 2d 185, 186 (1991), the Fourth Circuit held that Insley's conditions of release did not consti-

Court's holding must rest on its understanding of the legislative history. The history on which the Court relies includes no relevant comments in the Committee Reports or the debates. It consists only of the fact that prior to 1987 the statute directed the Attorney General to make the credit determination. See *ante*, at 331–332. It seems to me, however, that that smidgen of history merely raises the issue without answering it. The fact that Congress carefully rewrote the relevant section in a way that makes the defendant's right significantly more valuable tends to support the conclusion that the changes in language were deliberate and should not be ignored. See *Union Bank* v. *Wolas*, 502 U. S. 151 (1991); *United States Railroad Retirement Bd.* v. *Fritz*, 449 U. S. 166, 179 (1980). Recognizing the district court's authority to enter an appropriate order at the conclusion of the sentencing hearing is entirely consistent with a congressional purpose to enhance the value of this right.

## III

No statutory policy would be adversely affected by recognizing the district court's authority to make the initial credit determination in appropriate cases, and in fact, two important policies would be served. First, as the Court of Appeals for the Ninth Circuit has observed, see n. 10, *supra*, allowing the district court, in its discretion, to compute the credit when the sentence is imposed furthers the interest in providing prisoners with prompt, accurate, and precise information about the time they must spend in prison. This policy is expressly identified in the Senate Report describing

tute custody for purposes of credit; in *Ramsey* v. *Brennan*, 878 F. 2d 995, 996 (1989), the Seventh Circuit would not credit the time that Ramsey spent in a halfway house while awaiting trial, and in *United States* v. *Woods*, 888 F. 2d, at 656, the Tenth Circuit held that Woods was not entitled to credit for the time he spent at a residential treatment center when he was out on bond. In each of these cases, the issue was ripe for decision at the sentencing hearing.

the value of a procedure "whereby the offender, the victim, and society all know the prison release date at the time of the initial sentencing by the court, subject to minor adjustments based on prison behavior called 'good time.'" S. Rep. No. 98–225, p. 46 (1983).[12]

Second, and of even greater importance, allowing the district court to make the credit determination furthers the interest in uniform and evenhanded sentencing that is the centerpiece of the entire Sentencing Reform Act of 1984. When there are disputed issues that must be resolved by a judge, an adversarial proceeding, in which the parties are represented by counsel and the proceeding takes place in open court and on the record, is the best guarantee of a fair and accurate decision.[13] The convicted defendant is represented by trial counsel at the time of sentencing, but usually must fend for himself after he is incarcerated. Committing the decision to the Attorney General after the defendant has begun to serve his sentence, particularly if he must serve his sentence in some facility remote from the district of conviction, can only minimize the effective participation of defense counsel. Indeed, it may generate meritless *pro se* claims for credit that could be avoided by prompt consideration at sentencing, as well as complicate and delay the disposition of meritorious claims. A flexible approach that allows the judge to decide when, and how, the credit determination

---

[12] As the Senate Report made clear, one objective of the Act was to redress the situation in which "prisoners often do not really know how long they will spend in prison until the very day they are released." S. Rep. No. 98–225, at 49.

[13] Several States have recognized the advantages of assigning to the court the task of calculating jail credit. See Fla. Stat. § 921.161 (1991) ("A sentence of imprisonment shall not begin to run before the date it is imposed, but the court imposing a sentence shall allow a defendant credit for all of the time he spent in the county jail before sentence. The credit must be for a specified period of time and shall be provided for in the sentence"); see also Cal. Penal Code Ann. § 2900.5(d) (West Supp. 1992); Mass. Gen. Laws § 279:33A (1990).

should be made is fully consistent with the purposes of the statute and with its text.[14]

For the foregoing reasons, I would affirm the judgment of the Court of Appeals.

---

[14] The information required for the sentencing judge to make a credit determination could easily become part of the information that is routinely provided to the judge in the presentence report. Such a report already contains the convicted offender's prior criminal history, which includes much of the information necessary to decide whether he is eligible for credit for time in custody. The report could contain the amount of jail credit the person is entitled to, and if there are other sentences pending or unserved, a recommendation whether the current sentence should be concurrent or consecutive to any prior sentences.